Case number 12-1207 United States of America v. Umar Abdulmutallab Argument not to exceed 15 minutes per side. Mr. Rossman, you may proceed for the appellant. Good morning, Your Honor. May it please the Court. Have you reached your time, Mr. Rossman? Yes, Your Honor. I've reserved two minutes. What about the police? May it please the Court. My name is Travis Rossman. I represent Pella Umar v. Abdulmutallab in this appeal for his conviction and life sentence. This case involved an alleged incident of international terrorism. The media dubbed Mr. Abdulmutallab the Underwear Bomber. He allegedly attempted to detonate a bomb concealed in his underwear in an attempt to kill almost 300 people aboard a flight from Amsterdam to Detroit in December 2009. The bomb did not detonate. The airplane landed safely. No one was seriously injured other than Abdulmutallab. He was charged with eight counts. He faced a life sentence. He fired his attorneys. He proceeded pro se with standby counsel. He went to trial. He stood up on the first day of trial and said, I want to plead guilty. The judge talked him out of it. He stood up on the second day of trial and pled guilty to Judge Plowman. The primary issue in this case on appeal is the denial of the motion for a competency examination. Abdulmutallab did not have a competency hearing. His standby lawyer filed a motion requesting one. Now, there was a hearing to determine whether a competency examination was necessary, but it was not an actual competency hearing or competency examination. Interestingly enough, the lawyer that questioned his competency in a request for a hearing is the same one that stood up on the day that he introduced the plea and said in his estimation he was competent. That's correct, Your Honor. I think by the time the trial had begun, he had called the issues to the attention of the court. He wanted the court to be aware of the issues.  And at that point, he just agreed to go along. I think he respected the court's finding. He didn't find it necessary to raise it again. Well, I don't think he abdicated his duties. He had a dilemma. He had to help his client present a defense. He had to preserve his working relationship with his client. He had to abide by the attorney-client privilege. But at the same time, he had to call the issues to the court's attention. So he had a dilemma. He couldn't just stand up and say, my client is totally crazy, because that would damage his working relationship. But at the same time, he had to call the issues to the court's attention. And I think he did that sufficiently. I don't think that he had to raise it again later, after the court had already determined there was not a reasonable cause to question competency. It's not like a motion. I don't understand why it wouldn't have been appropriate, if that's what he believed, to say, I still believe that he should have a competency exam before he would accept this plea. Right. I think he should have done it, too. But I think at that point, based on the proceedings, he felt like the judge had already ruled on the issue. The judge had already heard what the judge wanted to hear. So assuming that this is a competent lawyer, well-known, if I remember right, correct? Yes. Then why wouldn't we take his statement to the judge when posed a direct question at the face of it? Well, competency always requires a concurrent determination. A defendant can be competent at one point in time and not competent at another point in time. And so at the time he filed the motion requesting the competency examination, there had to be a determination of reasonable cause at that time. If the judge denied a competency examination in error at that time, and Avalon Towers was later competent at trial and proceeded competently at trial, it's still error under Peyton Grove because there must always be a competency determination that's concurrent. We must make sure the defendant, especially a defendant who represents himself and is facing a mandatory life sentence, that he's competent at each stage of the proceedings. What was in the record that would indicate that he was competent? Well, there were several indications, Your Honor. First of all, he refused to wear the clothing that was provided for him. One night, right? Because he said it didn't fit properly, so he came in in undershirt? I think he refused to wear a suit, and he came in with a white T-shirt. He requested to wear his Yemeni belt and dagger in front of the jury, which I think is extremely bizarre. He attempted to wave his- I guess I'm struggling to understand. What was put before court, argued by his counsel, was this kind of- he was saying it was a back-and-forth one moment. He is competent in working toward assisting with his defense, and shortly thereafter, he is saying, well, I'm not going to do anything else. And that was a bad model, wasn't it? Well, there were allegations of mental lapses, disinterest in his defense, which I think is an extremely serious- perhaps the most serious allegation you can make when you have a defendant who is representing himself. And there were several other allegations of- suffered a series of reoccurring mental lapses, demonstrated irrational behavior, exhibited spontaneously erratic behavior, sometimes- Were there any specific examples of those issues? No, Your Honor. There were no specific examples listed in the motion. But again, standby counsel couldn't be too specific. He couldn't give away details protected by the attorney-client privilege. So where does that leave the court? It leaves the court having to look at what the court sees before the court, correct? Yes. And what did the court see? Well, the court saw somebody who vacillated in his interest in presenting a defense. He did several unusual things, such as the incident with the clothing, requesting to wear a mini belt and dagger. He attempted to wave his- Why is the- I'm struggling with understanding the distinction between a person who believes they have a cause that needs to be aired and a person who has a mental deficiency. To say that he came in and wanted to speak to his faith or wanted to wear items of paraphernalia that spoke to his faith, why is that indicative of mental illness as opposed to an indication of the basis of his decision? That the reason he was there and the reason he attempted the action was based on his faith. Well, it's indicative that he doesn't understand the proceedings. If he's there to air his faith, if he's there to profess his religious beliefs, I think that calls into question whether he understands the nature of the proceedings. Well, can't that be his very goal? I mean, this was a man who intended to murder himself. So why isn't it reasonable to assume that his very goal was to come before that tribunal and to make, once again, a point of his faith, and that that, to him, was the rational method of which he proceeded to fulfill his intention? It could have been his goal, but again, the court should have held hearings to make sure he understood the proceedings, especially where he was representing himself. Even if he's arguing, even if he presents motions in response to what the court says reasonably? I'm struggling with the burden that you're placing on the judge. The judge sees someone who comes in and responds to questions, attends, confers with counsel. I'm just struggling with what it is you expect this judge to have seen as a basis to require the judge to have, on penalty of mistrial or on penalty of reversal, not have had another examination. The primary basis would be his lack of interest in presenting a defense. He attempted to weigh his presence at pretrial conferences, even though he represented himself. There is some indication that he viewed the trial as a way to air his religious beliefs, and again, the judge should question that, especially when he's representing himself. Mr. Crossman, if we look backward a little bit from the date when you say the judge should have ordered a hearing, to what extent was the judge proper in taking into account all of the steps that your client had taken to try to fulfill this mission in order to determine whether he's competent? I think the judge could view the totality of the circumstances, and the judge could certainly look at that. But again, the question is not... Given that, the cases that you cite involve some pretty bizarre behavior in connection with the incident itself, and that seems to be manifestations of some sort of mental problems. In this particular case, it seems like this gentleman did some very, very logical things, well-thought-out logical things, at least in terms of his mission here. So, assuming that that's the case, are you alleging that something happened between the time that this bomb went off in his pants and the time then that this motion for a competency hearing was filed to show that his competency had somehow changed or diminished? Well, I think I would defer to standby counsel's determination on that. Standby counsel filed the motion. Standby counsel interacted with him. Standby counsel helped him present a defense. And again, I think the key issue is his lack of interest in presenting a defense, causing to question his competency, especially when he's representing himself. And there were some bizarre behaviors. They do not rise to the level of the bizarre behaviors in Peyton Grove. He's not somebody who's obviously mentally ill. He was not schizophrenic. He did not have hallucinations. So to follow up on what I think is the threat of a judge's questions, is it fair then for a district judge who simply denies a competency exam in terms of not relying upon the lawyer, or a better way to put it, I guess, is if a lawyer says this person's exhibit is some strange behavior, I think there should be an exam. It seems to me, under the facts of this case, you're almost saying it's fair not to grant it automatically. That's not what I'm saying, Your Honor. It's not per se error, but given the other circumstances, especially the allegations that he was not interested in presenting a defense, there should have been an exam. Also, he was representing himself. How many motions did he file? He filed one motion for – you're talking about motions for a competency examination? No, motions dealing with his defense. Well, he filed several. He filed multiple motions with the help of standards. Well, I suppose it might have happened behind the scenes that he seemed distracted at times. We don't know that because, as Judge Strantz pointed out, we don't have any examples of that. But certainly he did lots of things that appeared as if he was intent on defending himself. Certainly he did. And he also, without explanation, for no apparent reason, sometimes seemed uninterested in presenting a defense. First day of trial, he stands up. I want to plead guilty. I don't want to contest the charges. The district court judge says to his standby lawyer, do you know anything about this? He says, no, I have no idea what he's talking about. And they talk him out of pleading guilty. Second day of trial, he stands up, does it again, says, I want to plead guilty. Can't he do that? Is the desire to plead guilty indicative of malignancy? No, Your Honor, it's not. But it's indicative that we need to determine his competency before we allow him to do that. Do you agree more that he wants to plead guilty? Certainly not. But when the standby counsel files a motion that says he has questionable competency, we need this examination. The standby counsel is in the best position to gauge this, and we have some of these unusual behaviors that support those allegations. I think that's a reasonable cause to question his competency. Am I remembering the record correctly that subsequently the standby counsel indicated that it was his job to create the opportunity? He didn't reiterate the need for the competency test. I have a memory that there was something in the record where he said, I wanted the court to consider this. That's correct. At the hearing on August 17, 2011, he didn't stand up and say, He said, I want to call these issues to the court's attention so the court can deal with it. And again, I think the fair implication is he couldn't be seen to be taking a position adverse to his own client. He couldn't stand up and say, my client is crazy, and continue to work with his client and present a defense. And so that's why he edged. He had to do that to preserve the working relationship. I see that running low on time. I would just like to point out to the court that under Indiana v. Edwards, there's a higher standard for competency to proceed to trial and represent yourself as able and talented. The Dusty standard does not apply. It's a much more demanding standard, and the district court should award the competency hearing before allowing him to proceed for a state of trial. All right, thank you.  Thank you, Your Honor. May it please the court, my name is Jonathan Tockel. I represent the United States in this case. I'd like to begin with something that counsel alluded to in response to a question from Judge McKee, in which he said, well, standby counsel simply agreed to go along with what the district court had ruled. In fact, upon her denial of that motion, this is at page ID 763, the district court invited new evidence, if there was any, and said to standby counsel, if something arises that makes you feel it important to renew that motion, then by all means, please do so. So I don't think there could be any inference that counsel simply decided not to renew the motion if there was evidence to support it because of what the district court had said. The defendant on appeal frames the issue as whether the district court erred by not ordering a competency example prior to allowing the defendant to stand trial when it was brought to the district court's attention by standby counsel, and then compounded that error by failing to order a competency exam prior to permitting him to proceed pro se. And the defendant, I think, jumbles a lot of facts in support of that argument. And I think the court will see as we go through this that the proper framing of the question really would be whether the district court erred by not sua sponte ordering a competency examination when the defendant fired his appointed counsel and opted to proceed pro se. So I'd like to talk about the chronology of that for just a moment. I am curious, before you go too far down that path, why do you get to reframe his argument? Well, I believe that's the argument that he's stating, Your Honor, because on page 11 of the reply brief, he says, I'm sorry, it's page 18 of the reply brief, and I'm quoting here, at the instant Abdulmutallab announced that he wanted to present himself at trial, represent himself at trial, the district court should have recognized the higher standard of competency and concurrently evaluated whether Abdulmutallab's competency to represent himself was reasonably in doubt in light of that standard. So he is referring to the moment of waiver, not anything that came later. So we have three potential trigger points then. That would appear to be the case, Your Honor. I'm going to say motion by standby counsel offering legal. Yes, and perhaps other points as well, because I'll allude to the chronology. He was obviously arrested on Christmas Day of 2009. He made his initial appearance on a complaint the next day, December 26th, and at that time, counsel was appointed for him, the federal defenders. The case proceeded with counsel for approximately nine months until September 13th of 2010. It was on September 13th of 2010 that the defendant indicated his desire for the district court to waive counsel and proceed pro se. The court held that hearing, accepted the waiver, and then the next day, September 14th, appointed standby counsel. You say that the district court accepted the waiver. How long did that hearing take, and how much dialogue took place between the judge and the defendant personally? The district court word for word followed the bench book for the waiver of counsel, asked all of the questions that this court has said must be recorded. It was a relatively brief hearing, Your Honor. I would say it was five or six minutes, but it covered all of the items that had to be covered. And did the defendant respond appropriately to each question? Yes, he did, Your Honor. He responded appropriately in the sense that any pro se defendant would respond appropriately. The district court asked him if he was familiar with the federal rules of evidence or the federal rules of criminal procedure. Of course, he was not, but he understood that that placed him at a disadvantage. The district court gave him the opportunity to not waive counsel. The district court, in fact, admonished him that, in her opinion, it was a bad idea for him to do so. And he adhered to that decision and said, I want to represent myself. And the district court, Your Honor, reiterated, not in that level of detail, not the entire bench book inquiry, but at each and every subsequent hearing that's laid out in our brief, she asked the defendant time and time again, do you wish to continue representing yourself? If you like your representation or your relationship with standby counsel, I will appoint him to represent you. And each time he declined to do so. So as of September 13th, when that waiver took place, standby counsel obviously did not claim any impairment because he had just begun representing him. That claim did not arise until August 5th the following year. So it was almost an entire year later. Significantly, on September 13th of 2010, the date he asked to proceed pro se, his fire attorneys, the federal defenders, did not make any claim whatsoever to the district court that he was incompetent and shouldn't be allowed to remove them, at least without a competency hearing. They did not resist their removal on that basis. And of course the district court had interactions with the defendant both at that hearing and prior to the hearing. And a year later when the issue of competency was raised, she referred back to those and said, I've had interactions with this defendant and I've never had any sense whatsoever that he's unable to understand me or communicate me or have any difficulties whatsoever. So if the question is whether, as of September 13th of 2010, a reasonable district judge would have questioned the defendant's competence and asked for an examination, the question would have to be no because there was no evidence whatsoever at that point to support that. So it seems to me then the question for the defendant to prevail on appeal would have to be whether, as of the date standby counsel filed his motion the following year in August, August of 2011, a reasonable district judge would have questioned his competence. And then taking it a step further for the follow-up question of whether that question as to his competence implicates the entire right to self-represent because that particular question about self-representation was not actually raised in the motion that standby counsel filed. So that's the first problem with the chronology. So we then get to August of 2011 when standby counsel makes the motion. And following that, October 12th, so two months later, the defendant pleads guilty. And at that time, standby counsel agrees with the district court that the defendant is in fact competent. That's at page ID 678. And so that was two months later. So whatever issues might have arisen in the days leading up to the filing of that motion in August, by two months later when the defendant's pleading guilty, they've resolved themselves. Standby counsel is not raising them. Now, on appeal, counsel has argued that there must be a concurrent determination of competency. I don't entirely agree with that because of this court's decision in United States Miller, which is at 531F3340, because at page 350, the court permitted a retrospective analysis by the district judge or something that took place later in the trial to say that the defendant was competent at an earlier phase. Today, in oral argument, counsel has discussed a number of factors with the court, which he says should have caused a reasonable judge to question the defendant's competency. All of those factors that were discussed occurred long after, not long after because the proceedings didn't go on long after, they all occurred after that August 2011 hearing and motion as to competency. And those factors are all set forth beginning on page 9 of the reply brief. The issue about his clothing, specifically his suit, instead of a t-shirt, that happened at a suppression hearing on September 14th, which was approximately a month after the motion. There was an issue about his Yemeni clothing and jagger. That arose during voir dire, which took place in October, just prior to the trial. It's closer to two months after that August hearing and motion. And plainly what was going on was that the defendant was trying to go to the district court. That's bad form, but it's not evidence of incompetency. It happens with unfortunate regularity in criminal cases. Why do you say he was trying to go to the district court? Because of the discussion that went back and forth between the district judge and himself, where the district judge said, you can do what you want to do, I'm just trying to tell you that defendants who come dressed in a different, not improper attire, don't make a good impression with the jury, but it's up to you. The defendant just continued with that until later in the proceeding when he did in fact change his clothing. The counsel then raises a series of issues related to the court proceedings. He referred to the fact that the defendant didn't think standby counsel needed to receive discovery, that the defendant didn't want to attend pretrial conferences even though he represented himself, that he made legally unrecognizable arguments, that he hadn't figured out very close to the trial what tasks he would undertake himself and which tasks would be undertaken by standby counsel. Those facts are simply true of all pro se defendants. As this court said in back, the fact that someone is not a good lawyer or may have a fool for a client does not make them incompetent. If there is a right to represent oneself, then making bad legal decisions cannot equal incompetency. And then counsel had a discussion with Judge Stranch about wanting to plead guilty on the first day and in fact pleading guilty on the second day. And again, pleading guilty is not any evidence of any sort of mental incompetency. If it was, all defendants, or all pro se defendants at least, would be incompetent. And it's significant that the defendant at Udinas in the Supreme Court would have been incompetent under that standard since he waived counsel for the purpose of pleading guilty and that decision in fact led to a death sentence in that case and the Supreme Court upheld that decision as being competent. There's one other factor which is significant, which is that the defendant in fact pleaded guilty against the advice of his standby counsel and yet at the time of the plea, standby counsel agreed with the district court that he was competent. Now certainly if there was any reason at that point, particularly in light of the district court's invitation to him to come back with any new evidence at the point where he says he's pleading guilty, he's pleading guilty to offenses which carry mandatory life sentences, if there was any reason for standby counsel to think that he was not competent, he would have raised that with the district court. He did not. There were some references also to the defendant's shouts during trial. He shouted Allahu Akbar. Counsel cites that taking place at sentencing and also took place at his plea. But what's important to remember is that those two occurrences took place after he made his statements about his jihadist ideology after he made his statements, and I'm quoting, saying that he and the Mujahideen proudly killed in the name of God after he made his statements that Osama bin Laden was alive, Anwar al-Awlaki was alive, that they were rightly guided, and that he was following their teachings. And the occurrence at sentencing took place just after a video was played showing the power of the Bab, an FBI demonstration video showing how it would have functioned if it had worked properly. And so what that really is is not any evidence of incompetency, it's simply another instance of him repeating his religious justification for his actions. It's not evidence of incompetency, it's evidence of his ideology. And by the way, that whatever he said at sentencing was more than six months after the motion had been filed by standby counsel, and it was almost four months after the guilty plea at which standby counsel agreed with the district judge that the defendant was confident. And so in the brief, at least, counsel tried to stretch that into an argument that the district court really didn't understand the defendant. I think the most that anyone can take from that is that perhaps the district court didn't understand those erratic words, but not that she had any difficulty understanding the defendant. And then just to talk about, for a brief minute, because I'm running out of time, about the drug factors, counsel made light of the fact in the briefs that there was no prior medical opinion regarding mental competency. It's not surprising that there wasn't, because the defendant is a foreign national. In fact, in the four years leading up to his mission, the defendant was attending college in London, which is not exactly a backwater, and it was thoroughly investigated, and there was no evidence whatsoever of any mental health issues during his time in London. And so when the district court in those proceedings said that she had had many interactions with the defendant and never had any reason whatsoever to question his competency and that she had no problem communicating with or understanding him, she was well within her discretion to deny that motion without a hearing. Unless the court has questions, I'll remind my briefs for any other points. Thank you. Thank you. I'd like to make a few brief points. First of all, a defendant who is more interested in making jihadi statements than presenting a defense and whose competency has been called into doubt by a standby counsel should not be allowed to represent himself without a competency hearing. Presenting a defense is the key aspect of being able to represent yourself. It's the key part of being a defendant. You're not advocating a general rule that it has to be a competency exam for anybody that wants to represent themselves, are you? Certainly not. So why is there a different standard, apparently, that you impose because somebody is a jihadist?  And Admiral Motallo showed evidence that these concerns were supported by simply making jihadi statements instead of making a defense. But let's assume that in the pursuit of martyrdom, you want to carry out an act, as in this case. You don't succeed. You then want to evidence your attempt to be a martyr in connection with the upcoming public proceeding. You want to have a platform. You want to voice your views to the world. Wasn't his conduct largely consistent with what you would expect a jihadist to do, having failed in his primary mission? No, it's not. If that were the case, I would expect him to take each trial, take the stand, and make numerous jihadi statements and drag the proceedings out farther instead of just standing up and pleading guilt. Well, I may be true, but at least I would tell the point that the person makes that decision for whatever reason. They're actually more empowered to make jihadist statements and arguments that we might find unavailing if they're representing themselves than if they have to go through a lawyer that has the concomitant professional duties limiting what he or she does. Again, all this is possible. In a way, it's speculation because we don't know because the district court didn't order a competency hearing. So if it's possible, let's assume that this largely could go either way, doesn't that favor then upholding the exercise of the district judge's discretion who was there and actually observed and saw the person? No, Your Honor. We would contend it shows that there was a reasonable cause to question his competency if it could go either way and if we're left with nothing but speculation based on the record. I see. All right. Thank you, Mr. Rossman. We know that you are appointed under the Civil Justice Act. We want to thank you on behalf of your excellent efforts, on behalf of your client, and on behalf of the court and the district. Thank you, Your Honor.